| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-143 |
| | ) | (VARLAN/INMAN) |
| DONALD RAY REYNOLDS, JR., and | ) | |
| NATHANIEL SMITH, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the magistrate judge pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court on defendant Nathaniel Smith, Jr.'s Motion to Suppress Evidence and Request for Franks Hearing [Doc. 54] and on defendant Donald Ray Reynolds, Jr.'s First Motion to Suppress. [Doc. 59] On May 13, 2009, the parties appeared before the Court for a hearing on the instant motions. Assistant United States Attorneys Tracee Plowell and Gregory Weddle appeared on behalf of the government. Attorney John Eldridge appeared on behalf of defendant Reynolds and attorney Donny Young appeared on behalf of defendant Smith. Both defendants were also present.

I.    **Probable Cause Standard**

Both of the motions before the Court raise questions of whether the search warrants relating to this case were supported by probable cause. The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the

search of a home or personal property except upon a finding of "probable cause, supported by oath

or affirmation, and particularly describing the place to be searched, and the persons or things to be

seized." U.S. Const. amend. IV.

Probable cause to search is "a fair probability that contraband or evidence of a crime will be

found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing

"requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." Id. at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely
> requires that the facts available to the officer would "warrant a man
> of reasonable caution in the belief," Carroll v. United States, 267 U.S.
> 132, 162 (1925), that certain items may be contraband or stolen
> property or useful as evidence of a crime; it does not demand any
> showing that such a belief be correct or more likely true than false.
> A "practical, nontechnical" probability that incriminating evidence
> is involved is all that is required. Brinegar v. United States, 338 U.S.
> 160, 176 (1949).

Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds

for belief supported by less than prima facie proof but more than mere suspicion." United States v.

Bennett, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists

is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238.

Initially, the Court would note that the issuing judge's determination that probable cause

exists is entitled to "great deference." United States v. Allen, 211 F.3d 970, 973 (6th Cir. 2000)

(quoting Gates, 462 U.S. at 236). This deferential standard promotes the preference for the use of

search warrants as opposed to warrantless searches. Id. In determining the sufficiency of the search

warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit."

United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); see also Whiteley v. Warden, 401 U.S.

560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence

that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for

concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998)

(quoting Gates, 462 U.S. at 238-39) (alterations in original). In addition, "a warrant application

must provide sufficient information to allow an issuing judge to independently determine probable

cause; his action cannot be a mere ratification of the conclusions of others." United States v. Gunter,

No. 07-5277, 2009 WL 37481, at *6 (6th Cir. Jan. 8, 2009) (citing Gates, 462 U.S. at 239). With

this jurisprudence in mind, the Court turns to the specific issues raised by the defendants.

## II. Defendant Smith's Motion to Suppress Evidence and Request for Franks Hearing [Doc. 54]

Defendant Smith moves the Court to suppress all evidence that was obtained by virtue of the

warrants in this case, arguing that those warrants were not supported by probable cause, that the

affidavits filed in support of the applications contained false information, and that the Leon good

faith exception does not apply. The government opposes the motion, arguing that the warrants were

supported by probable cause, that the defendant has not met his burden under Franks v. United

States, 438 U.S. 154 (1978), to justify a hearing on the question of allegedly false statements in the

affidavits, and that all of the evidence at issue was legally obtained by law enforcement.[1]

### A. Search of Cell Phones

---

[1]During the hearing, defendant Smith requested leave of the Court for additional time to review the search warrants governing the searches in Illinois. The Court granted the defendant leave to file supplemental motions as to the Illinois warrants on or before June 1, 2009. No additional motions had been filed as of June 3, 2009.

3

The first issue raised by defendant Smith involves the allegedly unconstitutional search of five cell phones which were taken from defendant Smith in connection with his July 20, 2007, arrest. In his motion, Defendant Smith asserted that he could find no search warrant for these phones and therefore law enforcement had no legal basis for searching them. In the alternative, the defendant argues that if there was a warrant to search the phones, it was not supported by probable cause. In response, the government points to a search warrant issued out of this District in case number 3:07-MJ-1111, authorizing the search of the phones at issue. The government contends that the warrant was supported by probable cause and that the search was constitutional.

The affidavit in support of the warrant authorizing the search of the cell phones indicates that defendant Smith was arrested in Illinois while in possession of 5,200 grams of marijuana. [Affidavit of Bruce Conkey, dated October 2, 2007, at ¶ 7] The affidavit further provides that the five cell phones at issue were in the possession of defendant Smith at the time of his arrest, that the narcotics for which he was being arrested had been transported via a Federal Express package, and that based on his training, experience, and investigation, the affiant believed that defendant Smith was engaged in drug trafficking and that the phones would provide evidence of drug trafficking activity. [Id. at ¶¶ 4-11].

Based on the totality of the circumstances, the Court finds that the affidavit does establish probable cause to believe that evidence of criminal activity, drug trafficking, would be found in the phones, that the warrant was properly issued, and that the search of the cell phones was constitutional.

### B.  Seizure of Defendant Smith

The defendant next argues that law enforcement officers purposefully delayed his arrest for the purpose of gaining access to the five cell phones in his car, that the arrest was merely a pretext for a search for evidence, and that the phones should thus be suppressed.  The government disagrees, arguing that the officers waited until a court-ordered electronic monitoring device placed in a package addressed to defendant at a motel indicated that defendant Smith had opened that package before the officers moved in to make the arrest.  The government contends that the officers acted properly, that it was prudent for the officers to wait until the defendant opened the package, thereby manifesting control over the contents, rather than rushing in and arresting the defendant the instant he picked up the package at the hotel.

In this instance, the Court finds that the timing of defendant's arrest was not a pretext for a search, but was the true goal of the officers.  The intent of the officers was to arrest defendant Smith for possession of the narcotics contained in the Federal Express package, and they properly waited until the defendant had opened the package, which of course indicated a <u>knowing</u> possession of the narcotics contained therein in violation of state and federal law.[2]  If the officers had acted prior to the opening of the package, the officers would not necessarily have been able to prove the "knowing possession" element of the relevant crime, 21 U.S.C. § 841(a)(1), and thus would have risked improperly arresting defendant Smith.[3]  Accordingly, the Court finds that the officers waited until

---

[2]The Court makes no finding as to whether the defendant did, or did not, knowingly possess narcotics, leaving that question for a jury's determination.

[3]The Court notes that the officers in question were operating under Illinois law, and thus would have been guided by the similar Illinois statute, 720 Ill. Comp. Stat. 550/4.  Both the Illinois statute and its federal counterpart require knowing possession as one of the elements of the crime.

5

they believed that a knowing violation of the law had occurred, and that their delay in arresting defendant was not a pretext to allow the officers to search defendant Smith's vehicle.

### C. Seizure of the Cell Phones

The defendant next argues that law enforcement illegally seized the cell phones at the time of defendant Smith's arrest in Illinois, arguing that the phones were not listed in the warrant which authorized the search of the Fed-Ex package. The government contends that the search of defendant Smith's vehicle, and the subsequent seizure of the cell phones from that vehicle, was appropriate as an incident of defendant Smith's lawful arrest.

The United States Supreme Court has held that law enforcement may search a vehicle incident to a lawful arrest when "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Arizona v. Gant, 129 S. Ct. 1710, 2009 U.S. LEXIS 3120, at *20 (2009). In this case, defendant Smith was arrested for alleged possession of a controlled substance, marijuana. Given the circumstances surrounding defendant's arrest, it was reasonable for the officers to believe that a search of defendant Smith's vehicle would produce evidence related to that crime, and therefore the officers were justified in conducting a warrantless search of defendant Smith's vehicle as an incident to his arrest. It was during this search incident to arrest that the officers found the five cell phones at issue. Given the volume of drugs found, coupled with the fact that the drugs were shipped via Federal Express to a hotel for pickup, the Court finds that it was reasonable for the officers to believe that the cell phones might contain evidence of drug trafficking, and therefore the phones were properly seized during the warrantless search incident to arrest. See Ajan v. United States, No. 2:02-CR-71, 2009 U.S. Dist. LEXIS 43579, at *25-26 (E.D. Tenn. May

20, 2009) (citing <u>United States v. Finley</u>, 477 F.3d 250 (5th Cir. 2007)) (authorizing the seizure of a cell phone incident to a drug related arrest).

**D.      Illinois Search Warrant**s

The Court notes that there are two search warrants issued out of Cook County, Illinois, at issue in this case. The first, requested by Officer Judith Solava and issued on July 18, 2007, at 12:15 p.m., is the warrant described by the defendant as the "Skokie" warrant. The second, requested by Officer Jeffery Show and issued on July 18, 2007, at 1:40 p.m., is the warrant described by the defendant as the "Cook County" warrant. Actually, both warrants were issued out of Cook County; therefore the Court will refer to the warrants by the names of the requesting officers, Solava and Show.

The first of the two warrants, the Solava warrant, was sought by police officers when a trained drug dog, "Casper," alerted on a Federal Express package, the same package which was later delivered to defendant Smith at the motel. After Casper alerted on the package, law enforcement sought the Solava warrant to search the package. After searching the package pursuant to the Solava warrant, officers sought and obtained the Show warrant, which authorized a search of the individual who eventually accepted and opened the Federal Express package.

The defendant attacks the Solava warrant, arguing that it was not supported by probable cause because the officers did not set forth Casper's credentials and qualifications as a certified narcotics dog. The affidavit in support of the Solava warrant sets forth the following facts as to Casper's training and involvement with the package:

> Chicago Police Canine Officer E. Riordon # 7712 and her Certified Narcotics Canine partner "Casper", were then summoned to conduct a parcel line-up. Upon arrival, P.O. Riordon gave a canine command. Canine "Casper" then began to sniff at the parcel. When "Casper"

7

came to the [parcel at issue] he became visibly excited and immediately sat down at the base of the parcel. This is the indication "Casper" is trained to give when he locates the presence of the odor of narcotics/Cannabis. "Casper" successfully completed narcotic detector canine re-certification training with the Chicago Police Department Canine Trainers in April of 2007 and is certified annually. "Casper" is trained to detect the odors of cocaine, heroin, cannabis and their derivatives and Methamphetamine. Since completing the training, "Casper" has successfully located narcotics/cannabis and has proved to be over 98% reliable.

[Affidavit of Officer Judith Solava, dated July 18, 2007, at p. 2]

In addressing the issue raised by defendant, the Sixth Circuit has held that:

It is not required that the affidavit explain the dog's training history. A dog sniff indicating the presence of controlled substances is per se probable cause for a search warrant. See United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988), cert. denied, 109 S. Ct. 1742 (1989); United States v. Quinn, 815 F.2d 153, 159 (1st Cir. 1987). The investigating officers do not have to describe in their affidavit the particulars of the dog's training. See United States v. Venema, 563 F.2d 1003, 1007 (10th Cir. 1977) (holding that statement in affidavit that the dog was trained and certified as a marijuana-sniffing dog was sufficient).

United States v. Cook, No. 89-5947, 1990 U.S. App. LEXIS 8733, at *4-5 (6th Cir. 1990). The

Sixth Circuit has more recently held that:

An indication by a well-trained dog establishes probable cause for a narcotics search, but the affidavit must show that the dog is trained and reliable in detecting narcotics. United States v. Berry, 90 F.3d 148, 153 (6th Cir. 1996). Dogs cannot sniff out narcotics without special training, which not all police dogs receive. Some dogs are trained to detect explosives or accident victims, or to help spot and detain suspects. Police officers who are not canine handlers are not always aware of the difference. The bare statement that the dog is trained and used in narcotics detection is enough, ibid., but the affidavit here says only that the dog was a Canine Officer's dog. This is not enough to establish the dog's reliability.

United States v. Chapman, 112 Fed. App'x. 469, 473 (6th Cir. 2004).

In this instance, the details of Casper's training provided in the Solava warrant greatly exceed the level required by Cook and Chapman. Given that the Solava warrant establishes that Casper had been re-certified only a few months prior to the search at issue, and given the assurances provided as to Casper's training, the Court finds that the Solava warrant satisfies Cook and Chapman, and that the Solava affidavit established probable cause to believe that narcotics would be found within the Federal Express package.

The instant motion does not directly attack the Show warrant. Therefore, the Court need not discuss whether the Show warrant was supported by probable cause; presumably, it was. The defendant does refer to the fact that the Show warrant does not authorize the seizure of the five cell phones discussed above. However, given that the Court's ruling that the cell phones were seized pursuant to a valid search incident to arrest, the Court will not address that argument.

### E.    Affidavit of Brian Grove

The defendant next argues that if the warrant which authorized the search of the five cell phones was premised on the affidavit of Special Agent Grove, that warrant would not have been supported by probable cause because of allegedly false statements in Special Agent Grove's affidavit. The warrant, however, was issued on the basis of the affidavit of Bruce W. Conkey, an investigator with the Knoxville Police Department. Mr. Conkey's affidavit related the details of Smith's arrest in Illinois, and the concomitant discovery and seizure of the five cell phones from Smith's vehicle. Smith's possession of a large quantity of narcotics, coupled with his possession of four different drivers licenses and five cell phones, provided more than ample probable cause to believe that those cell phones were used in defendant's narcotics trafficking and likely contained

evidence of that illegal activity. The warrant authorizing the search of the cell phones was supported by probable cause.

**F.    <u>Leon</u> Good Faith Exception**

The warrant authorizing the search of the cell phones and the Solava warrant were supported by probable cause, as a result of which the question of whether the good faith exception established by <u>United States v. Leon</u>, 468 U.S. 897 (1984), is an academic one. Nevertheless, in the event that the District Judge finds that the warrants were not supported by probable cause, it is prudent to address the <u>Leon</u> issue. In <u>Leon</u>, the United States Supreme Court held that the exclusionary rule should not bar "admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." <u>Leon</u>, 468 U.S. at 905. The relevant inquiry is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." <u>Id.</u> at 922 n. 23.

<u>Leon</u> established four situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the search warrant is issued on the basis of an affidavit that the affiant knows, or should know, to contain false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable, or where the warrant application was supported by nothing more than a "bare bones" affidavit; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. <u>See</u> <u>United States v. Washington</u>, 380 F.3d 236, 241 (6th Cir. 2004).

The defendant has made no showing that either of the warrants run afoul of any of these four circumstances. The only argument offered by the defendant is premised on the mistaken belief that the warrants relied on the affidavit of Special Agent Grove. As noted, such is not the case, and thus the defendant's contention that the Grove affidavit contains false information is irrelevant to the two warrants at issue. Rather, based upon the facts before the Court, the Court finds that the good faith exception would apply to shield the search of the cell phones and the initial search of the Federal Express package. Thus, should the District Court find that the Solava warrant or the warrant which authorized the search of the cell phones was not supported by probable cause, the <u>Leon</u> good faith exception would still serve to protect against the exclusion of the evidence.

### G. Bank Accounts

The defendant next argues that the government illegally obtained information regarding his Bank of America and Suntrust bank accounts. In response, the government argues that the financial information at issue was lawfully obtained from the banks themselves, and that the defendant has no Fourth Amendment interest in information or documents obtained directly from the banks.

In addressing this issue, the Sixth Circuit, citing the United States Supreme Court, has held that "[u]nlike his personal financial records, [the defendant] has no protected Fourth Amendment interest in any records held by his bank, as they are 'the business records of the bank[]' rather than documents over which [the defendant] can assert ownership or possession." <u>Doe v. United States</u>, 253 F.3d 256, 270 n.4 (6th Cir. 2001) (quoting <u>United States v. Miller</u>, 425 U.S. 435, 440-43, (1976)). Given that the records in question were subpoenaed from the banks, and not seized directly from the defendant, there was no Fourth Amendment violation and the bank records need not be suppressed.

11

**H. Request for <u>Franks</u> Hearing**

Finally, defendant Smith's motion also requests a hearing pursuant to <u>Franks v. United States</u>, 438 U.S. 154 (1978). However, as the Court pointed out in Section F, <u>supra</u>, the defendant's arguments on the <u>Franks</u> issue are made in reference to an affidavit which was in no way related to the searches at issue in the defendant's motion. In the absence of some showing that the affidavits offered in support of the search warrants at issue in the defendant's motion contained false information, a <u>Franks</u> hearing is not warranted. To the extent that defendant Smith seeks a <u>Franks</u> hearing as to the warrants which authorized searches of defendant Reynolds' property, there is no evidence that defendant Smith had a legitimate expectation of privacy in the property of defendant Reynolds, and therefore he has no standing to challenge those searches. <u>See, generally</u>, <u>Minn. v. Carter</u>, 525 U.S. 83 (1998) (holding that a person must have a personal expectation of privacy in the place/property at issue in order to move to suppress).

**I. Conclusion as to Defendant Smith's Motion to Suppress**

For the reasons set forth more fully above, the Court finds that (1) the Solava warrant was supported by probable cause, (2) the cell phones were legally seized incident to defendant Smith's arrest, (3) the search warrant authorizing the search of the cell phones was supported by probable cause, and (4) defendant Smith's bank records were legally obtained. Accordingly, the Court respectfully **RECOMMENDS** that the defendant's motion **[Doc. 54]** be **DENIED**.

**III. Defendant Reynolds' First Motion to Suppress [Doc. 59]**

Defendant Reynolds moves the Court to suppress all evidence obtained by the government pursuant to the search warrants issued by this court in case numbers 3:08-MJ-1063 and 3:08-MJ-1064. As grounds, the defendant argues that the warrants were not supported by probable cause, that

12

the affidavit[4] in support of the warrants contained false statements, that the affidavit relied on information provided by confidential informants without providing the additional support necessary to show the reliability of the informants, that the <u>Leon</u> good faith exception does not apply, and that the officers seized items not covered by the warrants. The government opposes the defendant's motion, arguing that the warrants were supported by probable cause, that the affidavit did not include false statements, that the information provided by the confidential informants was reliable and corroborated by law enforcement, that the good faith exception applies, and that all items seized either fell within the warrant or were seized pursuant to the plain view doctrine.

A.      **<u>Franks</u> Issue**

The first issue raised by the defendant's motion is that the affidavit offered in support of the warrants contained false information and therefore runs afoul of <u>Franks v. United States</u>, 438 U.S. 154 (1978). During the hearing, defense counsel stated that he was no longer pursing the <u>Franks</u> issue. Since defendant has withdrawn this portion of his argument, the Court will not consider whether the affidavit offered in support of the warrants contained false information, and instead proceeds to the next issue raised by this defendant.

B.      **Confidential Informants**

The defendant argues that the information provided by the two confidential informants in this case could not support a finding of probable cause because the affidavit did not provide sufficient evidence of the informants' reliability, nor sufficient corroboration of the information provided by them. In addressing the proper analysis for cases involving the use of confidential

[4]Both warrants rely on the same affidavit, that of Brian D. Grove, dated June 18, 2008.

informants, the United States Court of Appeals for the Sixth Circuit has provided the following

guidance:

> Our cases have identified three categories of informants: (1) named
> informants; (2) confidential informants, who are known to the affiant
> but not to the magistrate; and (3) anonymous informants, who are
> known to no one but the informant. Whereas naming an informant
> is often, but not always, an indicator of reliability, 2 WAYNE R.
> LAFAVE, SEARCH AND SEIZURE § 3.3(c) at 136 (4th ed. 2004),
> the police must find other ways to bolster the tips of the other,
> confidential or anonymous, informants. For instance, we demand
> consideration of an informant's "veracity, reliability, and 'basis of
> knowledge'" when dealing with a confidential informant, as we are
> in this case. Rodriguez-Suazo, 346 F.3d at 646 (quoting United
> States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999)). These factors are
> not evaluated independently; rather, the presence of more of one
> factor makes the others less important. For instance, the more
> reliable the informant, the less detail the informant must provide in
> his tips before a magistrate can find probable cause. See Gates, 462
> U.S. at 233.

United States v. Ferguson, 252 Fed. App'x. 714, 720-721 (6th Cir. 2007). The Sixth Circuit has

further held that in cases involving a confidential informant, such as this one, more is required than

a simple attestation to the reliability of the informant, but instead the law demands

> that an affidavit demonstrate more than simply blind faith in the
> words of an affiant who claims his unnamed informant is reliable.
> For example, in Rodriguez-Suazo, even though the officer's
> confidential informant had provided prior tips that resulted in over
> three arrests and convictions, the police still conducted some (albeit
> minimal) corroboration of the tip in question. 346 F.3d at 646-47.
> Similarly, in United States v. May, 399 F.3d 817 (6th Cir. 2005), we
> held that the tip of an unnamed confidential informant can support a
> finding of probable cause when "the issuing judge had before him
> 'additional evidence [that] buttressed the informant's information.'"
> 399 F.3d at 824 (quoting United States v. Williams, 224 F.3d 530,
> 532 (6th Cir. 2000)). One piece of additional evidence that the May
> court considered was that the informant had provided reliable
> information in the past, but we also considered the independent
> corroboration by the police. See also United States v. Williams, 224
> F.3d 530, 532-33 (6th Cir. 2000) (finding probable cause from an

14

affidavit that relied on a confidential informant who had previously
provided information leading to arrests and convictions, but where
the affiant also mentioned his own personal knowledge regarding the
sale of drugs at the location to be searched and the affiant separately
informed the issuing judge about police surveillance of the
residence), cert. denied, 531 U.S. 1095, 121 S. Ct. 821, 148 L. Ed. 2d
704 (2001).

Ferguson, 252 Fed. App'x. at 721. Thus, in determining whether to include information provided

by a confidential informant in the probable cause analysis, relevant factors for the Court to consider

include the informant's veracity, reliability, basis of knowledge, and whether the information

provided by the informant was corroborated by the police.

In this matter, law enforcement relied upon information provided by two confidential

informants: CW1 and CW2. The Court addresses each of the confidential informants in turn.

1.      CW1

The affidavit offered in support of the warrants at issue provides the following information

as to CW1:

On or about June 1, 2007, DEA was approached by a member of the
REYNOLDS narcotics trafficking and money laundering
organization who expressed interest in cooperating with law
enforcement. The information obtained from CW1 has been
corroborated through law enforcement investigation. Examples of
some, but not all, of the methods used to corroborate CW1' s
information is set forth further in this affidavit. CW1 is a reliable
informant and information provided by CW1 has been deemed
accurate.

CW1 provided the following information: CW1 stated that he/she had
observed REYNOLDS in possession of approximately 400 pounds of
marijuana and 50-100 pounds of cocaine. CW1 knew REYNOLDS
to be involved in drug trafficking for approximately ten years and
stated that REYNOLDS was currently in Arizona, possibly Tucson,
receiving a shipment of drugs. CW1 stated that REYNOLDS would
travel from Knoxville, Tennessee to Nashville, Tennessee via rental
cars, possibly utilizing Enterprise and/or National rental car services.

15

After arriving in Nashville, REYNOLDS travels by airplane to Tucson, AZ where he rents a hotel room at various locations. After REYNOLDS obtains the drugs, they are shipped via Federal Express (Fed-Ex) to hotels where REYNOLDS and his associates retrieve the packages. CW1 stated that the drugs are then broken down into desired quantities at Reynolds' residence in Knoxville, Tennessee. CW1 also informed that REYNOLDS had associates in Chicago and in Memphis.

CW1 provided cellular telephone numbers (602) 515-4773 and (323) 784-4981 as telephones that REYNOLDS utilizes to conduct his drug trafficking activities. CW1 knew REYNOLDS to frequently change telephones to avoid detection by law enforcement and that REYNOLDS also utilizes fake identification to purchase hotel rooms and other items to avoid detection by law enforcement.

CW1 knew that one of REYNOLDS sources of supply was named "Tony." CW1 informed that Tony utilized cellular telephone number (601) 706-3141. CW1 believed Tony resided in Arizona and that REYNOLDS traveled to Arizona to visit Tony.

CW1 further informed that REYNOLDS uses a used car dealer named "Albert" to purchase cars with drug proceeds. The cars are then sold to launder his profits. CW1 stated that he/she knew REYNOLDS uses his business, Timeless Entertainment, to conceal and disguise his drug trafficking activities and the proceeds of the drug trafficking activity.

CW1 identified Nathaniel "Nugget" Smith, 2516 Linden Ave, Knoxville, Tennessee, as REYNOLDS closest drug associate. The source stated one of Smith's cellular telephone numbers is (865) 951-6578. SMITH also utilizes a . . . pre-paid Master Card account [account information redacted] to pay for rental cars and other expenses associated with REYNOLDS drug trafficking activities.

[Affidavit of Brian D. Grove dated June 18, 2008, at ¶¶ 10-15] The affidavit then goes on to describe how the officers corroborated the information provided by CW1, including confirming defendant Reynolds' frequent travel between Nashville and Arizona, and that he booked similar flights for other known drug traffickers; confirming that defendants Reynolds and Smith had contact with each other; confirming the use of Fed-Ex packages shipped from Arizona to various hotels, and

16

arresting defendant Smith in the process of retrieving one such package; confirming that another

such Fed-Ex package was addressed to an individual by the name of V. Jack, and that defendant

Smith possessed fake identification in the name of Vincent Jackson; and confirming that several of

the phone numbers provided by CW1 were linked to defendants Reynolds, Smith, and another

individual identified by CW1 as "Tony." [Affidavit at ¶¶ 16-20]

The defendant attacks CW1 by arguing that law enforcement corroborated only innocent

facts, arguing that the officers failed to corroborate CW1's statements that concerned actual drug

trafficking. However, the appropriate question is whether law enforcement has provided sufficient

evidence of reliability so that the issuing judge may safely consider the information provided by the

confidential informant when making the probable cause determination. If the Court were to accept

the defendant's argument that law enforcement may only rely on information provided by

confidential informants when that informant is able to provide a verifiable "smoking gun" directly

linking the suspect to criminal activity, the Court would effectively eliminate the use of confidential

informants in most cases. The Court knows of no jurisprudence which supports such a view of the

law, and the defendants have not cited any.

In this case, given the amount of corroborating information learned by the police, the Court

finds that CW1 was sufficiently reliable for all information provided by CW1 to be considered in

the probable cause determination.

## 2.    CW2

The affidavit offered in support of the warrants at issue provides the following information

as to CW2:

> In or about October 2007, I debriefed CW2.  CW2 stated that he/she
> had information regarding Donald REYNOLDS Jr. and his drug and
> money laundering activities.  CW2 stated that REYNOLDS is a large
> scale marijuana trafficker who gets his marijuana from Arizona.
> CW2 further stated that REYNOLDS' main drug associate is an
> individual named Nathaniel "Nugget" Smith.  I have independently
> verified and corroborated the information received from CW2.
> Examples of some but not all of the methods of corroborating CW2's
> information is set forth in this affidavit.  I believe that CW2 is
> reliable and the information provided by CW2 is accurate.
>
> CW2 provided information regarding REYNOLDS' purchase of
> automobiles.  CW2 stated that REYNOLDS purchased numerous
> automobiles from a small used car lot located on Gay Street,
> Knoxville, Tennessee, named American Exchange.  CW2 recalled
> that REYNOLDS purchased two Cadillac Escalades, a Dodge 300,
> and a Mercedes Benz 400 series.  CW2 stated that REYNOLDS pays
> for his vehicles in cash that he receives from his drug trafficking
> activities and that REYNOLDS titles some of his vehicles in the
> name of his business, Timeless Entertainment, to make them appear
> legitimate.
>
> CW2 was also aware that "Nugget" was arrested in Chicago for
> marijuana possession.  CW2 stated that REYNOLDS provided
> "Nugget" with the 2007 Cadillac Escalade that Nugget was arrested
> in and knew that REYNOLDS had purchased the vehicle from
> American Exchange.

[Affidavit at ¶¶ 23-25]  The affidavit then proceeds to describe how the officers corroborated the

information provided by CW2, including:  confirming the purchase by defendant Reynolds and/or

Timeless Entertainment of a number of vehicles from American Exchange; confirming that

defendant Smith was in possession of a Cadillac Escalade purchased by defendant Reynolds; and

18

confirming that defendant Smith was in possession of the vehicle when arrested in Chicago for alleged drug trafficking activity. [Affidavit at ¶¶ 16, 26-36]

The Court finds that officers were able to corroborate enough of the information provided by CW2 to render his information reliable. Although the officers were not able to directly link the defendants to criminal activity by way of the information provided by CW2, such is not required for the informant's information to be considered when issuing a warrant. Rather, the question for the Court is whether the information provided by the informant was reliable, and given the corroboration obtained by the officers, the Court finds the information provided by CW2 was reliable, and was appropriately considered by the issuing judge in reaching his probable cause determination.

### C.    Probable Cause

Having found that the information provided by both CW1 and CW2 was reliable, the Court must next consider whether the affidavit, when taken as a whole and considered in view of the totality of the circumstances recited therein, established probable cause to believe that evidence of criminal activity would be discovered at the locations to be searched. When so considered or analyzed, the affidavit supports a finding of probable cause to believe that evidence of drug trafficking and money laundering would be found at the locations to be searched. The information provided by CW1 and CW2, coupled with the following facts, all combine to support such finding: the packaging materials discovered in defendant Reynolds' trash [[Affidavit at ¶ 21]; the evidence obtained during the arrest of defendant Smith [Affidavit at ¶¶ 16-17]; the arrest of "Tony" in conjunction with the seizure of 727 pounds of marijuana, and the fact that Tony was found to be in possession of a phone described by the confidential informants and containing the phone numbers linked to the defendants [Affidavit at ¶ 10]; the link between the vehicle in the possession of

defendant Smith at the time of his arrest and defendant Reynolds [Affidavit at ¶ 16]; all of the evidence of alleged money laundering [Affidavit at ¶¶ 26-47]; as well as all of the other information provided in the affidavit.

While standing alone, many of the individual pieces of information would be insufficient to support the issuance of a search warrant. But considering each bit of information singly and in isolation is improper; it is the "divide-and-conquer" approach repudiated by the Supreme Court in United States v. Arvizu, 534 U.S. 266 (2002). When considered as a whole, the affidavit provides probable cause to believe that evidence of drug trafficking and money laundering would be found at the locations to be searched. To the extent that the defendant argues that the affidavit provides no proof of actual criminal activity on the part of defendant Reynolds, it is noted that such proof is not required to obtain a search warrant; rather, only a showing of "a probability or substantial chance of criminal activity, not an actual showing of such activity," is required. Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983).

### D.    Items Seized

Defendant Reynolds also objects to the execution of the warrant in this case, contending that some of the items seized did not fall within the scope of the warrant. The Fourth Amendment requires that search warrants describe the items to be searched for and seized with particularity so as to "eliminate the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." U.S. Const. amend. IV.; United States v. Greene, 250 F.3d 471, 476-77 (6th Cir. 2001) (citing United States v. Blakeney, 942 F.2d 1001, 1026 (6th Cir. 1991)). While a "general order to explore and rummage" is not permitted, id., "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." Greene, 250

F.3d at 477 (citing United States v. Ables, 167 F.3d 1021, 1033 (6th Cir. 1999)).  Consequently, a description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit."  Id.   The Sixth Circuit has further held that:

> Unlawful seizure of items outside a warrant does not alone render the whole search invalid and require suppression of all evidence seized, including that lawfully taken pursuant to the warrant.  A flagrant disregard for the limitations of a search warrant might make an otherwise valid search an impermissible general search requiring the suppression of all evidence seized during the search.  Absent flagrant action, however, the items covered by the warrant will be admissible.

United States v. Lambert, 771 F.2d 83, 93 (6th Cir. 1985).   Additionally, items lawfully seized on plain view grounds during the execution of a warrant need not be suppressed.  Greene, 250 F.3d at 477 (citing United States v. Brown, 984 F.2d 1074, 1077 (6th Cir. 1993)).

The defendant's motion sets forth a list of seized items which the defendant contends were outside the scope of the warrant.  These items can be reduced to three categories: computers, telephones, and money counting machines.  The Court addresses each of these categories in turn.

### 1.    Computers

Anyone with a modicum of "computer knowledge" would reasonably conclude that "computerized records" are electronic data files stored in a computer or an electronic data storage device that is adjunct to a computer, e.g., a disk or flash drive.  The only way to obtain those computerized records is to seize, at least temporarily, the storage devices themselves, whether the computer itself, or the peripheral storage device, or both.  To be sure, although the warrant did not specifically authorize the seizure of "computers," it did authorize the seizure of computerized records.  As just discussed, the only way to seize computerized (electronic) records is to seize the

machines or devices that store those electronic records. Thus, seizure of the computers, since they contained the computerized records, was appropriate.

On the other hand, indefinite retention by the United States of the hardware itself is not proper, at least in the abstract, academic sense. The United States should be allowed a reasonable amount of time to search the computers and retrieve and copy those files which constitute evidence of the crimes under investigation. But the United States should not be allowed to keep that hardware in perpetuity (assuming that the hardware itself is not contraband subject to forfeiture) since it is theoretically possible that the owner of that hardware needs it to continue with otherwise legitimate pursuits. Accordingly, absent a prompt showing by the United States that it has a legitimate need to retain the computers and any other peripheral hardware seized from this defendant, it should be ordered to promptly return that hardware and equipment to defendant, or his order.

With this said, there is no basis to suppress evidence of any of the electronic information extracted from the computers or any peripheral hardware seized from defendant.

### 2. Telephones

As to the second category, telephones, the warrant authorized the seizure of "telephone equipment." Law enforcement seized approximately thirteen cell phones during the execution of the warrants, relying on the "telephone equipment" language. The defendant contends that telephones are not "telephone equipment" and thus were not properly seized. However, the Court finds that such a hyper-technical reading of the warrant is not appropriate. The term "telephone equipment" is not so rigidly defined as to preclude the inclusion of cellular telephones. Rather, giving the term "telephone equipment" its plain and ordinary meaning, the phones at issue qualify as "telephone equipment" and were properly seized.

22

### 3. Money Counting Machines

As to the final category, there is no question that the warrant does not specifically authorize the seizure of money counting machines. However, the government argues that the money counting machines, described as being similar to the machines used by banks to count large sums of cash, were properly seized under the plain view doctrine as evidence of money laundering.

"The plain view doctrine allows a warrantless seizure of items if: (1) the officer is lawfully on the premises; (2) the discovery is inadvertent; and (3) the incriminating nature of the items is immediately apparent." United States v. Blakeney, 942 F.2d 1001, 1028 (6th Cir. 1991). In this circumstance, all three factors were satisfied. The officers were lawfully on the premises executing the warrants at issue; there is no evidence that the officers expected to find money counting machines during the execution of the warrant; and neither is there any evidence that the officers obtained the warrants in question as a pretext for seizing the money counting machine. The linkage between the money counting machines and the charges of money laundering was immediately apparent to the officers executing the warrant. Accordingly, although the money counting machines fell outside the scope of the warrant, they were properly seized under the plain view doctrine.

### E. Good Faith

Having found that the warrants were supported by probable cause, the question of whether the good faith exception established by United States v. Leon, 468 U.S. 897 (1984), applies to shield the evidence in question from suppression is irrelevant. However, out of an abundance of caution, Leon will be discussed. In Leon, the United States Supreme Court held that the exclusionary rule should not bar "admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Leon, 468 U.S. at 905. The relevant inquiry is "whether

a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n. 23.

Leon established four situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the search warrant is issued on the basis of an affidavit that the affiant knows, or should know, to contain false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable, or where the warrant application was supported by nothing more than a "bare bones" affidavit; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. See United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004).

The defendant's motion relies on the first and third factors in arguing that the good faith exception should not apply in this case. However, as noted earlier, the defendant has withdrawn his Franks argument, leaving only the question of whether the warrant is so lacking in indicia of probable cause as to render an officer's belief in the validity of the warrants unreasonable.

The standard for determining whether an affidavit is "so lacking in indicia of probable cause" as to render a belief in its existence unreasonable is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place. United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004). "Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good-faith' reliance." Washington, 380 F.3d at 241. A "bare bones" affidavit "is one that states suspicions, or conclusions, without providing some

24

underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Van Shutters, 163 F.3d 331, 337 (6th Cir. 1998).

After considering all of the information contained in the twenty-one page affidavit, the Court finds that the warrants were not so lacking in indicia of probable cause as to take them outside the good faith exception. As the Court discussed previously, although a number of the pieces of information in the affidavit, standing alone, might be insufficient to support a finding of probable cause, when all of the information is considered together, and as a whole, as the "totality of the circumstances" analysis requires, the affidavit provides sufficient evidence of criminal activity such that it would be reasonable for a law enforcement officer to believe that the warrants were valid. Given the arrests of defendant Smith and "Tony," and the links established between those individuals and defendant Reynolds, the Court finds that the warrants fall within the protection of the Leon good faith exception.

**F.    Conclusion as to Reynolds' First Motion to Suppress**

For the reasons set forth above, the Court finds that: the information provided by confidential informants CW1 and CW2 was reliable; the warrants were supported by probable cause; the warrants fall within the scope of the Leon good faith exception; and that all items seized either fell within the scope of the warrants or were properly seized under the plain view doctrine. With respect to the computers, the Court recommends that the United States be ordered to return those computers to defendant or his order, barring a showing by the United States that it is entitled to retain possession of them indefinitely. Therefore, the Court respectfully recommends that defendant Reynolds' motion **[Doc. 59]** be **DENIED**.

25

## IV.     Summary

The Court respectfully **RECOMMENDS** that defendant Smith's motion **[Doc. 54]** be **DENIED,** and that defendant Reynolds' motion **[Doc. 59]** be **DENIED**.[5]

Respectfully submitted,


_____s/ Dennis H. Inman_____
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).