UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:08-CR-143 (VARLAN/INMAN) |
| DONALD RAY REYNOLDS, JR., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This criminal case is before the Court on defendant Donald Ray Reynolds, Jr.'s Motion for Judgment of Acquittal, or Alternatively for a New Trial [Doc. 192], in which defendant requests entry of a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) because the evidence presented at trial was insufficient to sustain his conviction or, alternatively, vacatur of the judgment in the interest of justice pursuant to Federal Rule of Criminal Procedure 33(a). The government opposes this motion [Doc. 196].

This matter is now ripe for the Court's consideration. For the reasons that follow, defendant's motion will be denied.

**I.  Background**

Defendant was indicted, pursuant to the second superseding indictment filed in this case, on one count of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride and marijuana; four counts of possession of a firearm in furtherance of a drug trafficking crime; three counts of possession with intent to distribute cocaine hydrochloride;

one count of conspiracy to commit money laundering; seventeen counts of structuring financial transactions to evade federal reporting requirements; six counts of engaging in monetary transactions in property derived from specified unlawful activity; and four counts of money laundering [Doc. 86]. Defendant proceeded to trial in this Court in February and March, 2010. Defendant was convicted on all counts on March 8, 2010 [*see* Doc. 188].

Defendant filed the motion for acquittal or alternatively for a new trial on March 15, 2010 [Doc. 192]. The government filed its response in opposition to defendant's motion on March 29, 2010 [Doc. 196].

## II. Standard of Review

As noted, defendant brings the motion for acquittal or alternatively for a new trial under Federal Rules of Criminal Procedure 29(c) and 33(a). Rule 29(c)(1) provides that a "defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). When reviewing an insufficiency of the evidence claim, the Court must decide whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).

In undertaking the sufficiency analysis, the Court can neither independently weigh the evidence nor judge the credibility of the witnesses who testified at trial. *United States v.*

2

*Welch*, 97 F.3d 142, 148 (6th Cir. 1996). After a review of the evidence, the Court may conclude that a conviction is supported by sufficient evidence even though the evidence "does not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Jones*, 102 F.3d 804, 807 (6th Cir. 1996) (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)). The sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction as long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

Defendant has also moved for a new trial under Federal Rule of Criminal Procedure 33(a). Rule 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). A motion for a new trial under Rule 33(a) "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). Generally speaking, a motion for a new trial under Rule 33(a) should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Id.* at 593-94. In considering a Rule 33(a) challenge to a conviction based on the weight of the evidence, the Court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said [with respect to these

3

cases] that [the judge] sits as a thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988).

Thus, while Rule 29(c) and Rule 33(a) deal with similar issues, the two rules are governed by different standards of review. On a motion for judgment of acquittal made pursuant to Rule 29(c), the Court is required to approach the evidence from the standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. On a motion for new trial made pursuant to Rule 33(a), the power of the Court is much broader, because the Court may weigh the evidence and consider the credibility of the witnesses. *See* Charles Alan Wright, Nancy King & Susan Klein, Federal Practice and Procedure § 553 (3d ed. 2004). The Court considers defendant's arguments below in light of these standards.[1]

## III. Analysis

Defendant sets forth a number of grounds for his motion. The Court addresses each of these below.

---

[1] The Court notes that although defendant styles the present motion as one for a judgment of acquittal or alternatively for a new trial, defendant does not challenge the sufficiency of the evidence offered by the government to convict him apart from introducing his motion with conclusory statements to that effect. Defendant's arguments instead point out alleged errors by this Court at trial which, for example, permitted the introduction of certain items of evidence to which defendant objected. Insofar as the Court rejects all of defendant's claims of error, the Court need not scour the trial record to find support for defendant's otherwise unsupported sufficiency argument.

4

## A. Presence in Courtroom of, and Testimony of, Government Witness Dave Lewis

Defendant first argues that this Court erred in permitting government witness Dave Lewis to remain in the courtroom during the testimony of other government witnesses despite the invocation by defendant of Federal Rule of Evidence 615, which provides for the sequestration of witnesses in certain circumstances [*see* Doc. 192]. Defendant also contends that this Court erred in permitting the testimony of Mr. Lewis regarding the "ultimate issue" before the jury [*Id.*]. Defendant argues that Mr. Lewis's presence in the courtroom, as well as his testimony, unfairly prejudiced defendant's case [*Id.*].

The Court disagrees. Rule 615 "does not authorize exclusion of . . . a person whose presence is shown by a party to be essential to the presentation of the party's cause." As the Sixth Circuit has recognized in the Rule 615 context:

> [T]he presence in the courtroom of an expert witness who does not testify to the facts of the case but rather gives his opinion based upon the testimony of others hardly seems suspect and will in most cases be beneficial, for he will be more likely to base his expert opinion on a more accurate understanding of the testimony as it evolves before the jury.

*Morvant v. Constr. Aggregates Corp.*, 570 F.2d 626, 629-30 (6th Cir. 1978). *Morvant* also holds that, in deciding whether to permit such a witness to remain in the courtroom during the testimony of other witnesses, the trial court is "bound to accept any reasonable, substantiated representation" by counsel amounting to a "fair showing . . . that the expert witness is in fact required for the management of the case." *Id.* at 630; *see also United States*

*v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991) (adopting holding in *Morvant* in the context of criminal trials).

The government at trial made a "fair showing" that Mr. Lewis's testimony was "required for the management of the case." In order for Mr. Lewis to issue an opinion as to the import of the details of the drug conspiracy in this case, it was necessary for Mr. Lewis to be present in the courtroom to hear the testimony of those involved in the conspiracy and to see the evidence seized during the investigation of that conspiracy. *See United States v. Callan*, 22 F. App'x 434, 449-50 (6th Cir. 2001) (no abuse of discretion where trial court permitted federal agent with specialized knowledge of subject matter at issue to remain in court and to testify against defendant after government made "reasonable, substantiated representation" that agent's testimony was essential to the government's presentation of the case); *see also Opus 3 v. Heritage Park*, 91 F.3d 625, 629 (4th Cir. 1996) ("Because Rule 615 is designed to preclude fact witnesses from shaping their testimony based on other witnesses' testimony, it does not mandate the sequestration of expert witnesses who are to give *only* expert opinions at trial. Indeed, an expert who . . . only assumes facts for purposes of rendering opinions, might just as well hear all of the trial testimony . . . ."); *United States v. Lussier*, 929 F.2d 25, 30 (1st Cir. 1991) (no abuse of discretion where district court permitted IRS agent to remain in courtroom and to testify at end of government's case as to his calculation of taxes due based on testimony and documents in evidence). The Court thus finds that Mr. Lewis's presence in the courtroom did not violate Federal Rule of Evidence 615.

Nor did Mr. Lewis's testimony at trial unfairly prejudice defendant's case. As the Court noted in its ruling on defendant's objection to Mr. Lewis's testimony at trial, the Sixth Circuit has upheld the decisions of numerous trial courts permitting Mr. Lewis to testify in this manner. *See, e.g.*, *United States v. Alford*, 332 F. App'x 275, 281-82 (6th Cir. 2009) ("[Mr.] Lewis's testimony was highly relevant and helped the jury in resolving the central issue of whether [defendant] possessed the crack with intent to distribute."); *United States v. Leasure*, 331 F. App'x 370, 375 (6th Cir. 2009) (internal citations omitted) ("[Mr.] Lewis's opinions . . . are consistent with expert testimony regularly allowed by this court . . . [and] his twenty years of experience as a special agent for the Drug Enforcement Administration qualifies him to discuss the different stages of the drug chain and distribution process."). The Court thus finds no error in permitting Mr. Lewis to testify in this case as he did.[2]

**B.    Testimony of Danielle Barto**

Defendant next contends that this Court erred in allowing the testimony of Danielle Barto regarding the recovery of trash from the trash receptacle outside defendant's home [Doc. 192]. In support of this argument, defendant explains that Ms. Barto had previously testified under oath that she did not actually retrieve the trash herself from defendant's trash can [*Id.*]. Defendant explains further that Ms. Barto had also previously testified under oath that she did not see the trash collector take any trash from defendant's residence [*Id.*].

---

[2] The Court notes further that it issued a cautionary instruction to the jury after the government's direct examination of Mr. Lewis explaining the limited nature of the opinion testimony Mr. Lewis was offering. As the Sixth Circuit has held, "[S]uch expert testimony is not unduly prejudicial, especially if the district court has given a cautionary instruction." *Alford*, 332 F. App'x at 282 (citing *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001)).

7

Defendant contends that the Court thus erred in admitting this testimony before a proper foundation had been laid, and without providing defendant an opportunity to cross-examine the third person who collected the evidence at issue from defendant's trash can [*Id.*]. Defendant contends further that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice [*Id.*].

The Court disagrees. As the Court explained in its ruling on defendant's objection to this testimony at trial, and as is well settled in the Sixth Circuit, physical evidence is admissible when the possibilities of alteration or misidentification "are 'eliminated, not absolutely, but as a matter of reasonable probability.'" *United States v. McFadden*, 458 F.2d 440, 441 (6th Cir. 1972) (per curiam) (quoting *Gass v. United States*, 416 F.2d 767, 770 (D.C. Cir. 1969)). At trial, Ms. Barto testified that while she did not personally collect defendant's trash, she asked the trash collector to separate the trash collected from defendant's residence, and to deliver that trash to her. She testified further that she was stationed a short distance away, and that she took custody of the trash soon after it was collected. She also testified that the trash bags contained mail items and other documents reflecting defendant's name and address. Such testimony suffices to eliminate the possibility of the alteration or misidentification of the items in defendant's trash "as a matter of reasonable probability." *McFadden*, 458 F.2d at 441. The Court thus finds no error in

admitting this evidence, or in its related decision not to require the government to produce the person who collected defendant's trash firsthand for cross-examination by the defendant.[3]

## C. Testimony of Nathaniel Smith Identifying Defendant's Handwriting

Defendant next contends that the Court erred in permitting Nathaniel Smith, a co-defendant and government witness, to identify defendant's handwriting during Mr. Smith's testimony [Doc. 192]. Defendant argues that the government failed to establish that Mr. Smith was sufficiently familiar with defendant's handwriting prior to identifying it through his testimony [*Id.*]. Defendant thus contends that by permitting this testimony, the Court violated Federal Rule of Evidence 901.

The Court disagrees. Rule 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b)(2) provides further that "[n]on-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation" is an "example[] of authentication or identification conforming with the requirements" of Rule 901(a).

In satisfaction of Rule 901, Mr. Smith testified at trial that he had known defendant for a number of years, and that he was familiar with defendant's handwriting through his course of dealing with the defendant and through his observations of defendant's

---

[3] The Court notes that, as it explained at trial, "absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of evidence, not [to] its admissibility." *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990) (citations omitted).

handwriting. As the government correctly points out, courts routinely permit the admission of a lay witness's handwriting testimony upon a showing that the witness was familiar with the writer's handwriting. *See, e.g.*, *United States v. Carriger*, 592 F.2d 312, 315 (6th Cir. 1979) (holding that the "requirement of the illustration in Rule 901(b)(2) . . . was clearly satisfied by the testimony of the witness who was familiar with the handwriting and signatures" of the writer). The Court thus finds no error in admitting this testimony.

**D.    Testimony of Deputy David Elliott of Carroll County, Georgia; Mark Frost of Kingsville, Texas; and Border Patrol Officer Heimi Chavez[4]**

Defendant next contends that the Court erred in allowing the testimony of Deputy David Elliott of Carroll County, Georgia, Mark Frost of Kingsville, Texas, and Border Patrol Agent Heimi Chavez as to certain traffic stops which did not directly involve defendant [Doc. 192]. Defendant argues that the testimony of these officers, which related to drug and money seizures that the government attempted to link to defendant, should have been excluded [*Id.*]. Defendant contends that this evidence was not relevant under Federal Rule of Evidence 401 [*Id.*]. Defendant contends further that, even if this evidence were relevant, its probative value was substantially outweighed by the danger of unfair prejudice [*Id.*].

The Court disagrees. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid.

---

[4] There is substantial overlap in defendant's objections to the trial testimony of these three officers. The Court thus considers these objections collectively.

401. The testimony of these officers regarding their seizure of drugs and money, which formed the basis of the conspiracies to which defendant belonged, falls easily within the definition of relevant evidence. Further, the probative value of this testimony is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The probative value of such evidence is high in terms of proving the scope and details of the drug conspiracy. In addition, while defendant could expect to be prejudiced by this testimony, such prejudice is neither unfair nor substantially outweighs the probative value of the evidence. *Id*. The Court thus finds no error in admitting this testimony.

Defendant also contends that the Court erred in allowing the testimony of Deputy Elliott regarding the "essence of his conversation with the driver of the vehicle [he] stopped" [Doc. 192]. Defendant argues that this testimony constitutes inadmissible hearsay under Federal Rule of Evidence 801. Again, the Court disagrees. Rule 801 defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). As the government correctly explains, Deputy Elliott's testimony regarding his conversations with the driver of the vehicle he stopped was introduced not for the truth of the matter asserted in those conversations, but instead "to explain why Deputy Elliott took the investigatory steps he [did] in ultimately finding and seizing the $1 million in the secret compartment of [the driver's] vehicle" [Doc. 196]. This testimony did not constitute inadmissible hearsay. The Court thus finds no error.

## E. Denial of Defendant's Motion to Reopen Defendant's Case-in-Chief After Case Had Been Submitted to the Jury

Defendant next contends that the Court erred in denying defendant's motion to reopen his case-in-chief after the case had been submitted to the jury [Doc. 192]. After the case had been submitted to the jury, but before the jury had returned its verdict, defendant filed a Motion to Reopen Defense Proof Prior to Jury Reaching a Verdict [Doc. 186]. In that motion, counsel for defendant averred that he had received a phone call late that morning from Jeremy James, a rap artist living in Miramar, Florida [*Id.*]. Counsel further averred that Mr. James notified him that Mr. James was in Knoxville and was available to testify that "in 2004 he signed a contract with Universal Records and as a result received compensation totaling $450,000.00 of which he tendered $225,000.00 in cash" to defendant "in an attempt to assist the [d]efendant in the music business" [*Id.*]. Defendant argues that the Court's denial of this motion was in error.

The Court disagrees. In ruling upon defendant's motion at trial, the Court first noted that the decision to reopen a case for the limited purpose of introducing additional evidence is vested in the sound discretion of the trial Court. *United States v. Billingsley*, 474 F.2d 63, 67 (6th Cir. 1973). The Court noted further that, in ruling upon such motions, a "district court 'must consider the timeliness of the motion, the character of the testimony, and the effect of granting the motion.'" *United States v. Ross*, 300 F. App'x 386, 392 (6th Cir. 2008) (quoting *United States v. Reid*, 357 F.3d 574, 581 n.7 (6th Cir. 2004)). The Court noted

finally the Sixth Circuit's admonition that courts should be "extremely reluctant" to grant such reopenings. *Billingsley*, 474 F.2d at 67.

As the government correctly explains, there was "no reason [Mr. James] could not have been subpoenaed prior to trial and been available during the presentation of the defense case" [Doc. 196]. And it is unclear how evidence of cash allegedly provided to defendant in 2004 would be relevant to defendant's possession of cash in 2007 and 2008. Given the late date at which this motion was filed, the fact that the jury had already begun deliberations, and the questionable relevance of the proposed testimony, the Court finds no error in denying defendant's motion to reopen his case-in-chief after the case had been submitted to the jury. *See United States v. Wilson*, 27 F.3d 1126, 1129 (6th Cir. 1994) ("To . . . allow the testimony of a witness after closing arguments would have provided defendant with, perhaps, an unfair advantage and [would] quite possibly confuse the jury."). The Court thus finds no error.

### F. Testimony of Jim Checola

Defendant next contends that the Court erred in denying defendant's motion to strike the testimony of Jim Checola, a government witness testifying as the custodian of the records for Bank of America regarding its branches in Tennessee [Doc. 192]. Defendant argues that the Court erred in permitting Mr. Checola, who acknowledged that he was not the custodian of records kept by branches outside of Tennessee, to testify as to those records [*Id.*]. Defendant argues that admission of this testimony violated Federal Rule of Evidence 801.

The Court disagrees. The Court interprets defendant's objection as a challenge to the propriety of the Court's allowing Mr. Checola to validate the records at issue under Federal

13

Rule of Evidence 803(6), which permits the admission of business records upon the testimony "of the custodian or other qualified witness."[5] Thus, under the plain language of Rule 803(6), even if Mr. Checola were not the "custodian" of records kept by Bank of America branches outside of Tennessee, he could nevertheless authenticate those records upon the government's showing that he was a "qualified witness." The government made this showing by eliciting testimony from Mr. Checola that he was familiar with records kept by Bank of America, and that he recognized the out-of-state records as Bank of America business records. *See United States v. Baker*, 458 F.3d 513, 518 (6th Cir. 2006) (internal citations omitted) ("The phrase 'other qualified witness' is given a very broad interpretation . . . All that is required of the witness is that he or she be familiar with the record-keeping procedures of the organization."). The Court thus finds no error in admitting Mr. Checola's testimony.

### G. Testimony of Joshua Correa

Defendant next contends that the Court erred in allowing the testimony of Joshua Correa, a convicted felon not in U.S. custody and an unindicted coconspirator in this case [Doc. 192]. Defendant argues that the government was obliged to provide to the defense any exculpatory information related to this witness, including all payments made to or expenses provided and paid for by the government, and the locations to which Mr. Correa was

---

[5] Rule 803(6) explains that "[a] . . . record . . . made . . . by . . . a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . . as shown by the testimony of the custodian or other qualified witness" is "not excluded by the hearsay rule." Fed. R. Evid. 803(6).

permitted to travel after entry of his guilty plea in April 2009 [*Id.*]. Defendant contends that the government's failure to do so deprived him of a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1963).

The Court disagrees. The Court notes first that, as the government explains, "[a]ll cooperation-related payments made by the government to cooperating witnesses, including [to] Joshua Correa, were disclosed to [defense] counsel in a letter dated January 25, 2010" [Doc. 196]. The Court notes further that the government provided "additional discovery . . . consist[ing] of numerous emails Joshua Correa sent to ICE agents in Dallas, Texas, as well as Joshua Correa's signed plea agreement" to defense counsel prior to Mr. Correa's taking the witness stand [*Id.*]. Finally, the Court notes that Mr. Correa's release status pending his sentencing in the United States District Court for the Southern District of Texas, which is available as a public record, and which is not material to defendant's guilt in this case, does not fall within *Brady's* definition of "exculpatory evidence." *See Brady*, 373 U.S. at 88 ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material . . . to guilt."). The Court thus finds no error.

### H. *Franks* Hearing

Defendant next contends that this Court erred in denying defendant's motion for a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), regarding the contents of the search warrants executed on the residences at 10623 Alameda Drive and 1001 Crooked Springs Road in Knoxville on June 19, 2008 [Doc. 192]. Defendant explains that both

warrants were based predominantly upon information provided by two confidential witnesses, identified at trial as Albert Baah and Courtney Hensley [*Id.*]. Defendant argues first that Mr. Baah testified at trial that he "never provided information to [the government] regarding any activities of the [d]efendant which could have been related to drug use or distribution," and that Mr. Baah in fact "categorically denied under oath that he had ever possessed information regarding the [d]efendant and his alleged affiliation with illegal substances" [*Id.*]. Defendant next argues that the government assumed that the statements of Ms. Hensley were true, but failed to undertake any independent investigation of the veracity of those statements [*Id.*]. Defendant thus contends that the government was able to proceed to trial and introduce evidence which it would not have possessed had these search warrants been deemed invalid [*Id.*].

The Court disagrees with defendant. A "defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). The defendant must "point to specific false statements that he claims were made intentionally or with reckless disregard for the truth"; "accompany his allegations with an offer of proof"; and "provide supporting affidavits or explain their absence." *Id.* Even where a defendant meets these requirements, he will still lose his challenge if, "absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Id.*

In this case, as the government points out, defendant initially requested a *Franks* hearing, but later withdrew that request [*see* Doc. 88 ("During the [suppression] hearing,

16

defense counsel stated that he was no longer pursuing the *Franks* issue . . . [thus] the Court will not consider whether the affidavit offered in support of the warrants contained false information.")]. Defendant later filed a pro se motion for a *Franks* hearing; that motion was denied as untimely and non-meritorious [*see* Docs. 95, 104]. The Court thus properly declined to permit counsel for defendant to reopen this issue at trial. The Court notes further that any reopening of the issue at trial would have been futile, since even if the affidavit supporting these search warrants contained intentional or recklessly false statements, the government affiant testified at trial as to information he possessed about the conspiracy in the case, including the names of defendant's drug suppliers, which sufficed to establish probable cause in support of the warrants. The Court thus finds no error.

## I. Racially Neutral Jury Pool

Defendant next contends that the Court erred in not finding that the pool of jurors available for selection at trial, which included four African-Americans out of seventy-one persons, was not racially neutral and was therefore racially exclusive [Doc. 192]. The Court disagrees. While a defendant is entitled to trial by a jury selected from a fair cross-section of the community, *Ford v. Seabold*, 841 F.2d 677, 681 (6th Cir. 1988) (citing *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979)), he must show the following in order to make out a prima face case for violation of the fair cross-section requirement:

(1) That the group alleged to be excluded is a "distinctive" group in the community;

(2) That the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and

(3) That this underrepresentation is due to the systematic exclusion of the group in the jury-selection process.

*Ford*, 841 F.2d at 681 (citing *Duren*, 439 U.S. at 64). Defendant's naked allegation that the jury pool was "not racially neutral," standing alone, cannot sustain a prima facie case under *Ford* and *Duren*. The Court thus finds no error.

### J. *Batson* Challenge

Defendant finally contends that the Court erred in "allowing the [g]overnment to exercise a peremptory challenge excusing one African-American prospective juror without the [g]overnment providing the Court a racially neutral reason," in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The Court again disagrees with defendant. Under *Batson* and its progeny, the opponent of a peremptory challenge makes out a prima facie case of purposeful racial discrimination by showing (1) that the person to be struck is a member of a cognizable racial group; (2) that the proponent of the strike has used peremptory challenges to remove from the venire members of the defendant's race; and (3) that the relevant circumstances raise an inference that the proponent of the strike excluded the prospective juror because of her race. *Batson*, 476 U.S. at 96; *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999). If the opponent of the strike has made a prima facie case of purposeful racial discrimination, the burden shifts to the strike proponent to come forward with a race-neutral explanation of the use of the peremptory challenge. *Batson*, 476 U.S. at 97; *Paschal v.*

*Flagstar Bank, FSB*, 295 F.3d 565, 574 (6th Cir. 2002). Once the proponent of the strike comes forward with a race-neutral explanation, the district court must "assess the [strike proponent's] credibility under all of the pertinent circumstances" and "weigh the asserted justification against the strength of the [strike opponent's] prima facie case under the totality of circumstances." *Paschal*, 295 F.3d at 574 (quoting *United States v. Mahan*, 190 F.3d 416, 425 (6th Cir. 1999)).

In this case, while the person to be struck was a member of a cognizable racial group, and while the government used a peremptory challenge to remove from the venire a member of the defendant's race, the relevant circumstances raise no inference that the government excluded the prospective juror because of her race. The government struck a black female juror here because she failed to answer in the affirmative during voir dire that her spouse had been charged with a crime despite having so indicated on her jury questionnaire. The government struck a white female juror for the same reason. Moreover, even were the fact that the government moved to strike a black female enough to raise an inference of "purposeful racial discrimination," the government came forward at trial with a "race-neutral explanation" for that strike. *Cf. United States v. Gibbs*, 182 F.3d 408, 439 (6th Cir. 1999) (upholding prosecution strike where juror knew the prosecuting attorney but failed to respond when asked if she knew counsel); *see also Cook v. Lamarque*, 593 F.3d 810, 823 (9th Cir. 2010) ("[M]isrepresentations to the court regarding criminal experience are an extremely persuasive reason for using a peremptory challenge."). The Court thus finds no error.

## IV. Conclusion

After a careful analysis of defendant's arguments, the Court finds no grounds that would justify entry of a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) or vacatur of the judgment in the interest of justice pursuant to Federal Rule of Criminal Procedure 33(a). Accordingly, defendant's Motion for Judgment of Acquittal, or Alternatively for a New Trial [Doc. 192] is **DENIED**.

IT IS SO ORDERED.

                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE